PADDOCK ENGINEERING CO. OF TEXAS,
Appellant,

v.

M. O. RIFE, Jr., Appellee.

No. 15878.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 7, 1958.

Rehearing Denied March 7, 1958.

Biggers, Baker, Lloyd & Carver, Ralph D. Baker and Kenneth C. Stephenson, Dallas, for appellant.

Stone, Agerton, Parker & Kerr, and John G. Street, Jr., Fort Worth, for appellee.

RENFRO, Justice.

The plaintiff, Paddock Engineering Co. of Texas, brought suit in the nature of a sworn account against M. O. Rife, Jr., to recover the purchase price of certain equipment and supplies furnished in connection with the construction of a swim-ming pool. The defendant filed a counter-claim for damages, alleging that poor materials and workmanship on the part of plaintiff caused defendant to expend the sum of $2,100 for reasonable and necessary repairs to remedy the defects.

The case was tried before the court without the intervention of a jury. A short form judgment was entered which decreed that plaintiff recover nothing from defendant, but that defendant recover of plaintiff the sum of $1,061.80.

Findings of fact and conclusions of law were neither requested nor filed.

It is apparent from the record that the court arrived at the above sum by accepting the sum of $2,100 as the reasonable cost to defendant of repairing the pool, and offsetting this amount by $1,038.20, the amount of the supplies, etc., furnished by plaintiff and not paid for by defendant.

The plaintiff, by points of error, contends there was no evidence, and insufficient evidence, to uphold the judgment, that it is against the weight of the evidence; that the undisputed evidence shows necessary repairs could have been made at a cost of only a few hundred dollars.

Witness McNary, Vice President of plaintiff corporation, testified the only defects noticeable were hairline cracks in the the plaster; no complaint was made of leakage in the pool; that the pool would look better if the hairline cracks were chiseled out and refilled.

Klophenstein, superintendent of construction for plaintiff, testified only the best of material was put into the pool and the best of workmanship employed. Witness had been in business of constructing swimming pools for many years. He testified the only defects in the pool were hairline cracks in the plaster, that the pool did not leak, that the pool could have been plastered for $300 to $350; that the pool had set for six months in the rough before any plaster was put on, and had not cracked.

Plaintiff's superintendent on the particular job, Chadwick, long experienced in building swimming pools, testified he repaired some hairline cracks in the plaster and did not see any cracks in the structure of the pool; it was not necessary to cut up the pool to repair the cracks; that a complete coat of plaster over the inside of the pool would have been sufficient; that the cost of a new plaster job would be about $350. In his opinion, the work defendant had done on the pool did more harm than good.

Bob Llewellyn, employed by defendant to remedy the defects, testified that when he examined the pool he noticed failures in the walls and in the bottom and in the material used in the original construction; cracks were visible through the plaster—went from one side, down one wall and across the main deep portion of the pool and made a circular effect and started back up the other side of the pool; that the defects indicated a structural failure and not a condition in the plaster itself; he had to go into the pool with jackhammers, remove all the cracks and go down to the subsoil of the pool wall—completely through the walls—in order to get foundation for the repair work he was to do on top of the pool; then had to repair the walls so structural steel could be placed, put gunite on top of the steel, then re-plaster and refinish the pool; he contracted to do the work for $2,100, which amount was reasonable; during the work he found trapped rebound (sand) which had accumulated from the original construction of the pool, the rebound had no structural strength and weakened the wall of the pool; the original wall, instead of being one homogenized wall, consisted of three different distinct portions, which resulted in a weak wall; if a pool is designed properly, with the proper amount of steel in it, placed strategically, the actual earth conditions would not have any structural effect on the pool itself; in his work on the pool he did not find any steel

billet bars, but did find reinforcing mesh, billet bars should be used fluently; when he got into the wall, back of cracks, he found loose sand he could remove by hand; this sand should have been removed during the construction; the method he used to repair the pool was the only way the weakened condition could be alleviated; he repaired cracks that had not been touched by plaintiff or any one else, but found some places in the shallow end where attempts had been made to cover up cracks. The witness explained in detail the work he did and the reasons therefor.

In a case tried without a jury, the court sits as a trier of the facts as well as the law. He is the judge of the credibility of the witnesses and the weight to be given their testimony. 3–B Tex. Jur., p. 475, sec. 941. It is apparent from the condensed evidence heretofore set out there is some evidence of probative force to uphold the trial court's implied findings that the defects in the swimming pool were of serious nature and that the work performed and the price charged by Llewellyn were reasonable and necessary. So plaintiff's points of no evidence and insufficient evidence and that the evidence is undisputed the work could have been done for only a few hundred dollars are not well taken.

In view of plaintiff's contention the judgment is against the great weight of the evidence, it is this court's duty to weigh and consider all of the evidence in the case, that which supports the implied findings and the judgment and that which does not, in order to determine whether such findings and judgment are so against the weight and preponderance of the evidence as to be manifestly unjust, regardless of whether there is some evidence of probative force to support it. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Wilkie v. Dean, Tex.Civ.App., 289 S.W.2d 402. We have carefully examined the entire record. In our opinion, the find-

 

ings and judgment are not so against the weight and preponderance of the evidence as to be manifestly unjust.

 The implied findings and the judgment are fully supported by Llewellyn's testimony. Under the record before us, to hold that the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust would be to usurp the trial court's function as judge of the credibility of the witnesses and the weight to be given their testimony.

 Plaintiff contends the court erred in not allowing it a reasonable attorney's fee, as prayed for in its sworn account. Plaintiff argues that the requirements of Art. 2226, Vernon's Ann.Civ.St., having been met, it was mandatory that the court grant a reasonable attorney's fee. When defendant denied the sworn account under oath, the question of whether plaintiff was entitled to an attorney's fee became an issue in the case. The court found that plaintiff was indebted to defendant more than defendant was indebted to plaintiff. Under the facts before the court, it was within his province to determine whether plaintiff should be awarded an attorney's fee.

After the trial the plaintiff learned by chance that Dorian Pulliam had inspected the pool with a view of making a bid on the repair job. At the hearing on the motion for new trial, Pulliam testified to defects he saw and gave his estimate as to what the cost of repair should have been. Plaintiff urges it was entitled to a new trial on the basis of the newly discovered evidence. Pulliam's testimony was merely cumulative of the evidence offered by plaintiff on the trial of the case, and to some extent impeachment of Llewellyn's testimony as to cost of repair.

 Whether a motion for new trial on the ground of newly discovered evidence will be granted or refused is generally a matter addressed to the sound discretion of the trial court and the trial court's action will not be disturbed on

appeal, absent an abuse of discretion. Mitchell v. Bass, 26 Tex. 372; Williams v. Southern Life & Health Ins. Co., Tex. Civ.App., 208 S.W.2d 574; 3–B Tex.Jur., p. 424, sec. 928. We are unable to say, from the record before us, that the court abused its discretion in the instant case.

Judgment of the trial court is affirmed.