Homer PUCKETT et ux., Appellants,

v.

W. A. FRIZZELL, Appellee.

No. 39.

Court of Civil Appeals of Texas.

Tyler.

March 19, 1964.

Rehearing Denied April 16, 1964.

John E. Heitler, Pope & Heitler, Tyler, for appellants.

Ben Goodwin, Tyler, for appellee.

SELLERS, Justice.

This suit was filed in the 114th District Court of Smith County by Homer Puckett and wife Nobie M. Puckett who reside in Harris County, Texas, against W. A. Frizzell who resides in Smith County, Texas.

The suit grows out of a transaction between Plaintiffs Puckett and Defendant Frizzell, whereby the plaintiffs sold to defendant a house and lot in the City of Tyler, Texas. The dispute is over the agreed consideration for the property, it being the plaintiffs' contention that the defendant agreed to pay them $3,600.00 and assume an outstanding indebtedness against the property in favor of the East Texas Savings and Loan Association of Tyler, Texas.

The plaintiffs, in their petition, plead a mutual mistake, ignorant of the true meaning of the deed sent to them for their signatures, inadequacy of the price paid them in that the reasonable market value of the property was $6,500 and the price actually paid by the defendant was $3,600.00.

The plaintiffs seek to reform the instrument to show the true consideration. A trial amendment by the plaintiffs asked the Court for a money judgment in the amount of $3,600.00 in the event the Court finds they are not entitled to reformation of the deed.

The defendant denied the allegation of the petition of the plaintiffs and alleges affirmatively that he agreed to pay only $3,600.00 for the property. The case was tried before a jury; and at the close of the plaintiffs' evidence, upon motion of defendant, the Court instructed the jury to return a verdict in favor of the defendant. From this judgment the plaintiffs have duly prosecuted this appeal.

The trade between the parties was consummated over the telephone in conversation between Mrs. Puckett and Mr. Frizzell. Mrs. Puckett testified as follows:

"A. Mr. Arthur Frizzell.

"Q. And at that time how did you contact him?

"A. I contacted him first by letter.

"Q. At that time and in that letter did you set out what you wanted to sell the property for?

"A. Yes, sir.

"Q. Would you tell the Jury what that was, please?

"A. The price that I offered the place for sale for was $3750.00, including the furniture, or $3600.00 without the furniture, for our equity, and he would assume the loan of approximately $2600.00.

"Q. Now, go back, Mrs. Puckett, when did you first become owner of this property?

"A. In June of 1951.

"Q. And what was the price paid?

"A. $7000.00.

"Q. Now, after this letter to Mr. Frizzell, did you ever hear from Mr. Frizzell?

"A. I had a letter from him.

"Q. Do you recall what that letter said?

"A. To contact him by telephone collect, because he was interested in the property.

"Q. Now, did you do that?

"A. I contacted him by telephone; but not collect.

"Q. Do you recall about when that was?

"A. Not the definite date. Sometime the latter part of January of '61.

"Q. At the time that you talked to Mr. Frizzell, what, if anything, was said about the property?

"A.  He wanted to look at the place and would call us back the next night. We called him one night and he wanted to look at the place and would call us back the next night.

"Q.  And he did call you?

"A.  He did call us back.

"Q.  What did he say at that time regarding the buying of the property?

"A.  He agreed to pay $3600.00 for our equity and to assume the loan.

"MR. GOODWIN: Just a minute, please, I am going to object to that as not being responsive to the question which he asked.

"THE COURT: Sustain the objection. The question was, 'What did he say'. Go ahead.

"Q.  Exactly what did Mr. Frizzell say?

"A.  He agreed to pay $3600.00 for our equity.

"MR. GOODWIN: Your Honor, that is still not—

"THE COURT: I sustained the objection now, Mrs. Puckett. Your answer is a conclusion, so you answer his question by telling what Mr. Frizzell said to you on that occasion. Go ahead.

"A.  He said he would pay $3600.00 for the equity, including the furniture.

"Q.  Now, did you hear anything after that date from Mr. Frizzell, or anyone else, concerning the property? Strike that. What did you reply to Mr. Frizzell at that time?

"A.  I accepted the offer of $3600.00, including the furniture, and he was to assume the loan; and I

suggested that he go to East Texas Savings & Loan where the loan was located, and complete the deal.

"Q.  Who did you hear from next in connection with the sale of the property?

"A.  Mr. Garmon.

"Q.  Did you receive a letter or something from him?

"A.  With a letter and a deed ready to be signed.

"Q.  I hand you what is shown as Plaintiffs' Exhibit #2. Is that the letter you are speaking of?

"A.  It is.

"Q.  That is dated February 3rd, is it not?

"A.  Yes, sir.

"Q.  And I hand you what has been marked as Plaintiffs' Exhibit #3, a Warranty Deed. Is that the deed that was enclosed?

"A.  Yes, sir.

"Q.  After you received the deed, what did you do with it?

"A.  We had it signed before a Notary and returned it to Mr. Garmon.

"Q.  I hand you what has been marked as Plaintiffs' Exhibit #4—it is Plaintiffs' Exhibit #4. Is that your letter to Mr. Garmon?

"A.  Yes, sir.

"Q.  And in that letter was the deed also. Is that correct?

"A.  It was returned with the deed.

"Q.  When was the next time you heard anything concerning the sale of this land? This property?

"A.  When I received the checks.

"Q. And was that from Mr. Garmon also?

"A. From Mr. Garmon.

"Q. I hand you Plaintiffs' Exhibit #5. Is that the letter?

"A. Yes, sir.

"Q. That is dated February 14th?

"A. February 14th.

"Q. There were two checks in there, in that letter?

"A. Yes, sir.

"Q. What did you do upon receipt of those two checks?

"A. I returned them to East Texas Savings & Loan.

"Q. Why did you return them to East Texas Savings & Loan?

"A. Because the transaction was not carried out—

"MR. GOODWIN: Your Honor, I object to that, asking why she did so and so. That is irrelevant and immaterial to this matter and hearsay as to my client—what she thought about a certain situation.

"THE COURT: Overrule.

"A. Because the agreement, the transaction was not carried out according to the agreement."

Mr. Frizzell testified as follows:

"Q. Mr. Frizzell, you are the defendant in this case, are you not?

"A. Yes.

"Q. I would like to ask you whether or not or who did, if you know, file this Deed of record from the Pucketts to you?

"A. No, sir, I don't.

"Q. You did not do it?

"A. No.

"Q. And you did not attach the Internal Revenue stamps back here?

"A. No, sir.

"Q. When was the first time that you saw this instrument?

"A. Through the mail, when they sent it to me.

"Q. Beg your pardon?

"A. When they sent it to me.

"Q. Did they send it to you, or to East Texas Savings and Loan?

"A. In other words, I got it through— it was filed through the Courthouse, wherever it came from.

"Q. In other words, the first time you ever saw it was after it was sent to you from the County Clerk's office?

"A. Yes, sir.

"Q. You never saw it before then?

"A. I don't remember whether I did or not.

"Q. Well, did you see it—you heard Mr. Garmon testify that he called you and you came down and he showed you the Deed and letter and that you went ahead and paid?

"A. Yes, sir.

"Q. So, that is true, is it not?

"A. Yes, sir. Now, are you speaking of when I first seen it, or when the stamps were on it?

"Q. No. When you first saw it. Maybe that is where I am misunderstanding you. Before it was filed, when you saw it?

"A. Yes.

"Q. And that was over in Mr. Garmon's office?

"A. Yes.

"Q. That is where our difficulty was. I didn't mean to say it that way. Then after you saw it in Mr. Garmon's office and made out some checks, then the next time you saw it was when it came back from the County Clerk's office, after it had been recorded?

"A. Yes.

"Q. And you did not carry it over there?

"A. No, sir.

"Q. The land described in that Deed, in this Deed, is the same land which is known as 707 South Saunders Street here in Tyler, Smith County, Texas, is it not?

"A. Yes, sir.

"Q. Now, Mr. Frizzell, did you ever have a telephone conversation with Mrs. Puckett concerning the purchase of that piece of property?

"A. Yes, sir.

"Q. Do you recall about when that was?

"A. Well, the date, I don't remember.

"Q. The last part of January or first part of February, something like that?

"A. Yes.

"Q. And you heard Mrs. Puckett testify as to what she stated the agreement between you and her was, did you not?

"A. Yes.

"Q. What do you say the agreement was?

"A. The agreement was, she called us. We, of course, sent the letter and she called us collect. She called us collect, and we talked

on the price of it. She wanted thirty seven fifty for the property and the furniture; and I told her I wouldn't give thirty seven fifty, I would give her thirty six hundred. And she talked to her husband—I could hear her over the phone—she talked to her husband, and he said to take it, and she advised me to go to East Texas Savings & Loan.

"Q. And you went down to East Texas Savings & Loan?

"A. Yes, sir.

"Q. Who did you see down there?

"A. Jack Garmon.

"Q. Is that Mr. Garmon who testified earlier?

"A. Yes, sir.

"Q. And what did you do down there?

"A. I just told him that I had talked to Mrs. Puckett, and she had agreed to take $3600.00 for the property, and that they had a note on it, and they was to take their part of it and send her the balance. They knew all about the transaction, she had already made it, and I just told him, and he taken care of it from there on.

"Q. Now, Mr. Frizzell, you heard, as I said, what Mrs. Puckett said, so there must have been some— might have been some mistake as to what the actual consideration was, was there not?

"A. If there was, it was all on her part, because we didn't talk about it that way.

"Q. You said $3600.00 on your part? Is that what you offered her?

"A. Thirty-six hundred dollars for the property—furniture and house.

"Q. You didn't hear Mrs. Puckett say, 'Thirty-six hundred dollars for our part'?

"A. No, sir, he did not, he just said to accept it. That's all he said.

"Q. Did you talk to Mr. Puckett too?

"A. No, sir."

Mr. Garmon prepared the deed after talking to the defendant and sent it through the mail to Mr. and Mrs. Puckett. His letter enclosing the deed is as follows:

"You will please find enclosed a Deed on the property you and your husband are selling to Mr. Frizzell in Tyler.

"If you and your husband will execute this Deed before a Notary Public and have it notarized and return to us, we will close out this deal with Mr. Frizzell. I will collect a check from Mr. Frizzell for the amount he owes you on it, if you will let me know in your letter.

"You will have some expenses involved in this, that is $15.00 for the attorney drawing the Deed, $10.00 for the abstracter certifying your abstract to date and a small amount for revenue stamps to go on the Deed.

"If there is any other question you would like to have answered on this, please do not hesitate to call on me." The enclosed deed was as follows:

"STATE OF TEXAS } 1513
"COUNTY OF SMITH } KNOW ALL MEN BY THESE PRESENTS:
"THAT WE, H. D. PUCKETT and wife, NOBIE MILLSTID PUCKETT, of the County of Harris, State of Texas, for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS, cash, and other good and valuable consideration, to us in hand paid by W. ARTHUR FRIZZELL, the receipt of which is hereby acknowledged and confessed, and the further and additional consideration that the Grantee herein does hereby bind and obligate himself to assume, and does hereby assume the unpaid balance ($2,655.38) due on that certain promissory note in the principal sum of FOUR THOUSAND, FOUR HUNDRED TWELVE AND 52/100 ($4,412.52) DOLLARS, which note is fully set out and described in a certain Deed of Trust, dated February 22, 1954, executed by MRS. NOBIE H. MILLSTID, to LEO CHESLEY, Trustee for the East Texas Savings & Loan Association, Tyler, Texas, filed under record in the office of the County Clerk of Smith County, Texas, under file number 1927, reference to which is hereby made for a more complete description of said note and indebtedness; have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said W. ARTHUR FRIZZELL, of the County of Smith, State of Texas, all that certain lot, tract or parcel of land situated in Smith County, Texas, to-wit: * * *

"TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said W. ARTHUR FRIZZELL, his heirs and assigns, forever; and we do hereby bind ourselves, our heirs, executors and administrators to Warrant and Forever Defend, all and singular the said premises unto the said W. ARTHUR FRIZZELL, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"WITNESS OUR HANDS this the 4th day of February A. D. 1961.
"H. D. Puckett
"Nobie Millstid Puckett"

Mrs. Puckett returned the deed, duly executed, to Mr. Garmon, and her letter is as follows:

"Enclosed you will please find the papers signed and notarized.

"Mr. Frizzell will owe us three thousand six hundred dollars ($3600) on the property.

"We are under the impression that the purchaser (Mr. Frizzell in this case) bears the expense of the transfer. If we are wrong, however, we will send you a check for the amount, or you may deduct it from the $3600, and please send us a statement.

"We have a copy of last year's tax statement, and will appreciate your sending us a statement of the interest and insurance for tax purposes."

In reply to her letter and the deed, she received the following from Mr. Garmon:

"You will please find enclosed a check from W. A. Frizzell for $891.55 and also one from East Texas Savings and Loan Association for $76.22. These two checks are the proceeds from the sale of your property in Tyler.

"To account for your money, I understand that W. A. Frizzell was to pay you $3,600.00 for the property. We deducted the pay off of your loan in the amount of $2,668.66 and also deducted $15.00 for the attorney drawing the Deed, $4.40 for revenue stamps to go on the Deed, $13.00 abstract certifications and $7.39 for your part of this years taxes. I believe this will leave you a net figure of $891.55. We are also sending your our check for $76.22, which was the amount of money in your taxes and escrow account.

"If you have any further questions, please feel free to call upon us."

In reply to this letter, Mrs. Puckett wrote Mr. Garmon:

"You will please find enclosed the check from Mr. Frizzell in the amount of $891.55. We are returning the check because it is not according to our agreement. We, therefore, ask you to read the previous letter to you and the one written to Mr. Frizzell. In each letter it was clearly stated that the consideration was $3600 for our equity.

"We are asking, therefore, that the proper amount, $3600, be paid for our equity, or the property be deeded back to us.

"We are also returning E. Tex. S & L Check for $76.22.

"Please give this your immediate attention.

"Mr. Frizzell knows the agreement stated in the letter besides the telephone conversation in which the same agreement was made."

■ We are of the opinion that appellants' pleadings and evidence do not authorize a rescission or reformation of the deed between the parties. If there was a mistake in drafting the instrument as to the consideration, it was at least not mutual; and in order to reform or rescind a deed, fraud, accident or mistake must be alleged and proved. The deed between the parties is regular in all respects, and the only dispute between the parties is as to the true consideration. The appellant testified that she was to receive $3600.00 and appellee was to assume the loan. The appellee testified that he was to pay $3,600.00 for the property.

■ It is now well settled that, as between the original parties, it is not necessary to allege fraud, accident or mistake in order to show the true consideration for a conveyance. The early case of Johnson v. Elmen, 94 Tex. 168, 59 S.W. 253, 52 L.R.A. 162, opinion by Judge Gaines, discusses the issue at some length and sustains the principle.

In the case of Whitehead v. Weldon, Tex. Civ.App., 264 S.W. 958, 959, Judge Blair had this to say:

"This complaint is not sustained. The principle admitting parol evidence

to vary the consideration recited in a deed does not rest upon the ground of fraud, accident, or mistake; and therefore it is not necessary, as a basis for the admission of such evidence, that the pleading should contain such an allegation. * * * *

"As a general rule, the recitals of a deed are not conclusive as to consideration, and inquiry by parol and extrinsic evidence may be resorted to to show the real consideration. 22 C.J. 1157, and cases cited under note 53." ·

In the case of Cochell v. Cawthon, Tex. Civ.App., 110 S.W.2d 636, the rule is stated as follows:

"We are, of course, familiar with the rule that parol evidence is not admissible to contradict or vary the terms of written contracts and documents, and when such documents are executed and delivered, they automatically become effective in accordance with the terms and purposes evidenced by the language in which they are written. But there are exceptions to the general rule, and one of those exceptions is that parol testimony may be received to prove that the consideration recited in deeds or other written instruments was not in fact paid. Lanier v. Foust et al., 81 Tex. 186, 16 S.W. 994; Silliman v. Oliver, et al. (Tex.Civ.App.) 233 S.W. 867. The exception to the rule is sufficiently extensive to allow proof of other and additional considerations to those that are expressed. Taylor v. Merrill, 64 Tex. 494. These exceptions are as well established as the rule itself."

There are many cases sustaining this rule, but the above are believed to be sufficient to sustain our holding that the evidence raises an issue of fact to go to the jury as to the true consideration for the conveyance.

Mrs. Puckett's testimony that Frizzell assumed the debt against the property is not in dispute since the deed itself provides the assumption, and this is as binding on the appellee as the deed itself. This leaves only the question as to whether or not the total consideration was to be $3,600.00 and the assumption of the debt or just $3,600.00 as contended by appellee. A fact issue is thus presented.

The judgment is reversed and the cause remanded.