**Bill LATHAM, Appellant,**

v.

**James D. DEMENT et ux., Appellees.**

**No. 16799.**

Court of Civil Appeals of Texas.

Dallas.

Oct. 28, 1966.

Rehearing Denied Nov. 25, 1966.

**430**

John A. Pace, Dallas, for appellant.

Matthews, Weaver & Thorp, and Paul Thorp, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from a judgment rendered in two cases which had been consolidated for trial.

On May 1, 1964 appellant Bill Latham filed suit No. 86,999–A against appellees J. D. Dement and wife Clara B. Dement for a balance of $6,072.64 alleged to be due on the construction of a house for appellees. In this suit appellant also prayed for an attorney's fee in the sum of $2,000.

On July 2, 1964 appellant Bill Latham filed suit No. 88,821–E against appellee Dement for accounting under a written joint venture agreement dated July 15, 1963. This suit also included a count in trespass to try title wherein appellant Latham

asserted an equitable title to an undivided one-half interest in certain lots in a residential real estate subdivision known as Rancho Estates. It was the development of Rancho Estates which was the subject of the joint venture agreement.

There was still another suit filed earlier by appellant Latham against appellee Dement. This was suit No. 83,576–G, a trespass to try title suit, filed in a District Court of Dallas County January 3, 1964 in which suit appellant asserted title to an undivided one-half interest in the same land involved in suit No. 88,821–E. This suit was tried and a "take nothing" judgment was rendered in favor of the defendant Dement. No appeal was taken from this judgment.

The "take nothing" judgment rendered in Cause No. 83,576–G is not the subject of this appeal, but its legal effect is material to our decision here—a matter which we shall discuss later in this opinion.

It is undisputed that the parties entered into the joint venture agreement of July 15, 1963.*

Soon after signing the agreement appellant and appellee embarked on their joint venture and plans were drawn and filed dividing the acreage into fourteen numbered lots. Debts were incurred for the grading of streets, for the laying of concrete, for paving, etc. The parties agreed, partly for the purpose of stimulating sales, that each would build his home in the addition, the actual construction of said homes to be by appellant Latham. For that purpose Lot No. 6 was allocated to appellant Latham, Lot No. 7 to appellee Dement. Appellant agreed to build appellees' home for "cost plus $500.00." Appellees executed a warranty deed to appellant to Lot No. 7. An agreed valuation of $4,500 was placed on Lot No. 6 and $5,500 on Lot No. 7.

Disagreement and dissension soon developed between the joint venturers. The statement of facts is voluminous and we

---

* The substance of the material provisions of the agreement may be summarized as follows:

(1) Dement was owner of approximately 22 acres of encumbered land which the joint ventures proposed to subdivide into 14 lots, the development to be named Rancho Estates.

(2) It was stipulated that Dement was to retain title to the property and was to be paid the sum of $20,000 before any of the profits from the sale of lots were to be divided by the joint venturers. Out of this $20,000 Dement agreed to pay off the encumbrance of $9,000 against the property.

(3) The joint venture would be responsible for planning engineering, construction of improvements and all other acts and expenses necessary to cause the development to be made ready for the sale of lots to the public.

(4) Latham, a construction contractor, was to secure purchasers for the lots and wherever possible to agree to use the services of the joint venture in the construction of houses thereon. The identity of such purchasers and the terms of all agreements entered into with purchasers were to be subject to the written approval of Dement.

(5) Dement agreed to devote so much of his time as should be necessary to the business of the venture and to his obligations in connection therewith.

(6) Latham agreed to devote so much of his time as should be necessary to the business of the venture and to the construction of improvements required by the development and to the improvements in the form of homes and accessory buildings and improvements.

(7) The parties agreed to divide the venture's profits and losses equally, after the payment to Dement of the $20,000 for the sale of lots.

(8) The parties were to use their credit for the purpose of securing funds for the operation of the venture.

(9) All sums of money were to be deposited into a bank account in the name of the venture. Venture funds were to be withdrawn from said bank account for the personal use of the venturers only by mutual agreement and to be equalized if made for purposes of division of gains.

(10) Neither venturer without the written consent of the other was to sell or assign his interest in the venture or any of its assets, or settle any indebtedness due to the venture except on full payment thereof, or hire any employee or enter into any contract.

shall not attempt to detail all the controversies which arose.

Suffice it to say for present purposes appellant complained that appellee and his wife, because of their extravagance, ran the cost of their house in excess of their original commitment by the sum of more than $6,000; that Dement's credit was bad and appellant had difficulty with suppliers of labor and materials because Dement was connected with the venture; that Dement failed to contribute his share toward the expenses and the financing of the venture; and failed to cooperate in various particulars.

Dement on the other hand complained that Latham failed to establish a bank account in the name of the joint venture; that he appropriated venture funds to his own individual use; and that Latham finally claimed that the houses he was building were for his own individual account, as was evidenced by warranty deeds executed by Dement to Latham to Lots Nos. 1, 6, 9 and 10 and that he owned a half interest in all the other lots. Dement contends that the deed to Lot No. 1 was conveyed to Latham at an agreed valuation of $3,550 to apply on Dement's indebtedness to Latham for the construction of Dement's home on Lot No. 7; that Lot No. 9 was conveyed to Latham in settlement of a controversy with Dement's mother-in-law; and that the other deeds were executed for the purpose of expediting and facilitating the construction of houses on said lots so that Latham could the better discharge his obligations under the joint venture.

The trial was before the court without the aid of a jury. It was stipulated by the parties at a pre-trial conference that $6,503.14 was the balance due appellant Latham on the construction of appellee Dement's house, subject to offsets contained in defendants' answer.

In a written opinion and in the final written judgment the trial court made these findings:

(1) Appellees Dement were indebted to appellant Latham in the amount of $6,503.14 in Cause No. 86,999, less $2,997.64 which had previously been deposited in court by appellees, leaving a balance of $3,505.50 due appellant on said claim, subject to offset hereinafter found (offset of $3,550, see paragraph (4) hereinafter).

(2) Because of breaches by appellant of the joint venture agreement appellee Dement had the right to terminate and did terminate the joint venture agreement, and same is no longer of any force and effect.

(3) Appellant Latham had advanced funds for the operatoin of the joint venture in the amount of $6,800 and is entitled to reimbursement from appellee Dement in that amount, subject to offsets hereinafter found.

(4) Appellant Latham has received title to Lot No. 6 at an agreed valuation of $4,500; and also received title to Lot No. 1 at an agreed valuation of $3,550, and such agreed valuations aggregating $8,050 should be offset against appellant's claims in this litigation.

(5) The balance of $3,505.50 found to be due appellant in paragraph (1) above, together with the sum of 6,800 found to be due appellant in paragraph (3) above amounts to the sum of $10,305.50; and after allowing the offset of $8,050 found in paragraph (4) above, a total net amount due appellant from appellee Dement was $2,255.50.

(6) Appellant has no interest in Lots Nos. 2, 3, 4, 5, 8, 11, 12, 13 and 14 of Rancho Estates, except that he is entitled to an equitable lien on said lots to secure payment of the $2,255.50.

(7) The balance due appellant on the construction of appellees' house is not seriously disputed, except as to the offset matters above set out. The disputed fact issues which required the services of Latham's counsel were raised in the accounting suit rather than in the house construc-

tion suit, and as to these issues Latham was unsuccessful. Accordingly, Latham's claim for attorney's fee should be denied.

Judgment was rendered for appellant Latham for $2,255.50 in accordance with the above findings.

## OPINION

In his first two points appellant asserts that having executed general warranty deeds to appellant to certain lots appellees cannot claim that the construction of houses on said lots was for the benefit of the joint venturers; and all the evidence offered to show appellant had breached the joint venture agreement was incompetent and inadmissible because it violated the parol evidence rule in that it sought to vary and contradict the terms of the warranty deeds.

■ There is no merit in the first two points. It has long been the rule that under proper circumstances parol evidence is admissible to show the true consideration for the execution of a warranty deed. For example, a deed absolute on its face may be shown to have been intended as a mortgage, or a conditional sale, or a sale with option to repurchase. Loving v. Milliken, 59 Tex. 423; Parmenter v. Kellis, Tex.Civ.App., 153 S.W.2d 965 (writ refused). In this case the recited consideration in each of the warranty deeds was "$10.00 and other valuable considerations." This recital plainly showed that in each instance the deed itself was not the entire contract between the grantor and grantee and the rule permitting parol testimony to show the true consideration becomes especially applicable. Gulf C. & S. F. Ry. Co. v. Jones, 82 Tex. 156, 17 S.W. 534 (Tex.Sup.Ct.); Johnson v. Elmen, 94 Tex. 168, 59 S.W. 253; Detering v. Boyles, Tex.Civ.App., 155 S.W. 984 (no writ hist.); Cochell v. Cawthon, Tex.Civ.App., 110 S.W.2d 636 (writ dis.); Barton v. Kuehne, Tex.Civ.App., 234 S.W. 2d 84 (no writ hist.); West v. Wahlenmaier, Tex.Civ.App., 278 S.W.2d 213 (ref.n.r.e.); Puckett v. Frizzell, Tex.Civ.App., 377 S.W.

2d 715 (no writ hist.). Appellant's first two points are overruled.

In his third and fourth points appellant says that the court erred in holding that appellees could unilaterally rescind the joint venture agreement; and erred also in failing to give judgment dissolving the joint venture and distributing the assets under the law applicable to joint ventures and partnerships in Texas.

■ The court found that because of breaches of the contract by appellant appellee Dement was justified in terminating the agreement; and the judgment does for practical purposes dissolve the contract by so finding and by holding that the contract "is no longer of any force or effect." Suit No. 88,821–E was a suit for an accounting and the court did in effect resolve the claims of the parties against each other. There was no evidence that there were any profits from the venture. Appellant himself testified that he was not able to show that there were any profits. We think the court's holdings were warranted under the circumstances shown by the record. Thompson v. Duncan, 44 S.W.2d 904 (Tex.Com.App.); Jowell v. Carnine, 32 S.W.2d 511 (writ refused). Appellant's third and fourth points are overruled.

In his fifth point appellant claims that the court erred in not vesting title to the unsold lots in the joint venture, thus vesting a one-half undivided interest in them in appellant. We cannot agree to appellant's claim for three reasons:

(1) The written agreement expressly provides that title to the unsold lots shall remain in appellees.

(2) In the earlier suit filed January 3, 1964 against appellees in Cause No. 83,576– G appellant pleaded trespass to try title in statutory form, claiming a one-half undivided interest in the same property presently in controversy in Cause No. 88,812–E filed July 2, 1964. In connection with the January 3, 1964 suit appellant filed a chain

of title showing that he claimed a one-half undivided interest in the property by and under the joint venture agreement.

Appellee answered the January 3, 1964 trespass to try title suit by a plea of not guilty and special pleas setting up his defenses under the joint venture agreement. The suit was tried and ended in a "take nothing" judgment against appellant Latham and in favor of appellee Dement. This judgment had the effect of an adjudication of title in appellee so far as appellant was concerned. Art. 7391, Vernon's Ann. Civ.St.; Trigg v. Whittenburg, Tex.Civ. App., 129 S.W.2d 472 (writ refused); Permian Oil Co. v. Smith, 129 Tex. 413, 73 S. W.2d 490, 111 A.L.R. 1152 and 129 Tex. 413, 107 S.W.2d 564, (Tex.Sup.Ct.); Foster v. Wells, 4 Tex. 101, 104.

In the later suit for accounting and trespass to try title filed by appellant on July 2, 1964 (one of the cases now before us on this appeal) appellees pleaded res judicata of the trespass to try title count by virtue of the "take nothing" judgment in the earlier suit filed by appellant on January 3, 1964. This plea of res judicata was undoubtedly good.

The suit filed January 3, 1964 seems to have presented the same issues in regard to title as were presented in the suit of July 2, 1964. In any event appellant could have and should have litigated all his claims in the earlier trespass to try title suit; and if he did not do so the earlier judgment against him will be res judicata of all the issues which he could have and should have raised in said earlier suit. Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97, 99; Trigg v. Whittenburg, Tex. Civ.App., 129 S.W.2d 472 (writ refused); Pennington v. Pennington, Tex.Civ.App., 145 S.W.2d 688 (no writ hist.); Ogletree v. Crates, 363 S.W.2d 431 (Tex.Sup.Ct.); Chem-Gas Engineers, Inc. v. Texas Asphalt & Refining Co., et al., Tex.Civ.App., 398 S.W.2d 143 (no writ hist.).

(3) The evidence offered by the parties on the question of the purpose of the execution of the warranty deeds in controversy was contradictory and questions of fact in regard to title, if there were any, were found by the trial court contrary to appellant's contentions.

Appellant's fifth point is overruled.

In his sixth point appellant contends that the court should have allowed him attorney's fees under Art. 2226, V.A.C.S. for services performed and materials delivered in the construction of appellees' home. The court properly denied recovery for said fees. It was stipulated that appellees owed appellant $6,053.14 on the home. Against this appellee Dement was entitled to an offset in the sum of $2,997.64 which he paid into the registry of the court when he filed his answer in Cause No. 86,999–A. The court found that appellee was also entitled to an offset of $3,550, the agreed price of Lot No. 6 on which appellant built his home. These two offsets totaled the sum of $6,547.64—more than enough to account for appellant's claim of $6,053.14. Therefore Latham was unsuccessful in his effort to establish a net claim against appellees in Cause No. 86,999–A and it was not error for the court to deny recovery for attorney's fees. Paddock Engineering Co. of Texas v. Rife, Tex.Civ.App., 310 S.W.2d 594, 597 (ref.n.r.e.); Johnny Morrow's Wrecking Crew v. Slate, Tex. Civ.App., 368 S.W.2d 32 (ref.n.r.e.).

We are of the opinion that appellant was not entitled to recover attorney's fees for another reason. Plaintiff's cause of action in suit No. 86,999–A was for damages for breach of a written building contract between appellant and appellees for the construction of a house for appellees. An award of attorney's fees is not proper in such a case. Parks v. Benson Co., Builders, Tex.Civ.App., 393 S.W.2d 700, 704 (ref.n. r.e.); Ford Motor Co. v. Davis Brothers, Inc., Tex.Civ.App., 369 S.W.2d 664, 668 (no writ hist.); Kirkwood & Morgan, Inc.

v. Roach, Tex.Civ.App., 360 S.W.2d 173, 177 (ref.n.r.e.); Hicks, et al v. Smith, Tex.Civ.App., 330 S.W.2d 641, 647 (ref.n.r.e.); Meaders, et al v. Biskamp, 316 S.W.2d 75, 78 (Tex.Sup.Ct.). In the last named case our Supreme Court held that a claim for money due under a contract for the sale of real estate, an oil lease, and for the drilling of an oil well is not included within the definition of a sworn account under Art. 2226, V.A.C.S.

Appellant's sixth point is overruled.

The judgment of the trial court is affirmed.

Affirmed.