# NO. 12-18-00253-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CAROLYN NEILL JENNINGS,*<br>*APPELLANT* | § | *APPEAL FROM THE 123RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *ANTHONY JOSEPH PIAZZA, JR.,*<br>*APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Carolyn Neill Jennings appeals the trial court's declaratory judgment and judgment quieting title rendered in favor of Appellee Anthony Joseph Piazza, Jr. In two issues, Jennings argues that the evidence is insufficient to support the trial court's judgment. We affirm.

## BACKGROUND

This case involves a dispute over the ownership of a 59 acre tract of real property in Shelby County, Texas. The tract originally was part of a 200 acre tract, which was the community property of E.M. Rhodes and his wife, Mary Mathis Rhodes. The two had eight children together—Able, Tommy, Julia, Annie, Minnie, Lela, Susie, and Lizzie. E.M. Rhodes died intestate in 1915. As a result, Mary retained her undivided one-half community property interest and a partial life estate in the 200 acre tract, and each child received a one-sixteenth interest in the tract.[1]

By deed dated September 16, 1916, Able, Tommy, Lizzie, and Julia sold their undivided interests in the 200 acre tract to Lela, Susi, Annie, and Minnie for $7,500.00, resulting in a one-eighth interest in the tract for each of the buyers. The deed set forth, in pertinent part, as follows:

---

[1] *See* TEX. REV. ST. 1911 arts. 2462, 2469, *available at* https://www.sll.texas.gov/assets/pdf/historical-statutes/1911/1911-2-revised-civil-statutes-of-the-state-of-texas.pdf, at 522–24.

It is also hereby understood that said real estate and personal property is to be held as the community property of Mrs. M. M. Rhodes, Annie Rhodes, Minnie Harris, Lela Rhodes and Susie Rhodes, till the deceased of Mrs. M. M. Rhodes when this deed shall become valid and absolute in its effect and reading.

On July 26, 1919, Lela married Sidney Carl Neill. The two had two children—Bobby and James Neill.

In October 1921, Lela, Susi, Annie, and Minnie executed four deeds resulting in the partition of their interests in the 200 acre tract. In one of these deeds, Lela acquired title to the 59 acre tract "for and in consideration of the sum of Twenty-one hundred and seventy five ($2,175.00) DOLLARS . . . paid and secured to be paid, by Lela Neill in real estate values, the receipt of which is hereby fully acknowledged . . . ." The trial court found that as a result, Lela owned an undivided one-half interest in the 59 acre tract, subject to Mary's life estate.

By deed dated April 28, 1931, Mary, individually and as executrix under the last will and testament of E.M. Rhodes, for "one dollar and other valuable considerations[,]" conveyed to Annie, Susie, and Lela, her undivided one-half interest in the 200 acre tract. The deed also set forth, in pertinent part, as follows:

It is also understood and agreed that this deed and conveyance does not become absolute, until the death of grantor, and at the death of grantor, Annie Rhodes is to receive 91 acres of the hereinbefore described tract of land, Lela Neill is to receive 59 acres of the hereinbefore described tract of land, and Susie Wilson is to receive 50 acres of the hereinbefore described tract of land[.]

Mary died later that decade. Sidney Carl Neill died in 1957. He was predeceased by his and Lela's son, Bobby Neill, whose daughter is Appellant Carolyn Neill Jennings (Jennings). Sidney and Lela's other son, James, had one child, Bobbie Lynn Carlton. Bobbie Lynn had a son named Richard Hattaway. In the early 1980s, Lela conveyed the 59 acre tract to Bobbie Lynn.

James died in 1988. Lela died in 1990. Bobbie Lynn died in 2010 and bequeathed the 59 acre tract to Hattaway. By quitclaim deed dated February 4, 2016, Hattaway conveyed the 59 acre tract and other real property to Piazza.

Jennings filed the instant suit to partition the 59 acre tract. Piazza answered and counterclaimed, seeking to quiet title and requesting a declaratory judgment that (1) he is the sole owner of the 59 acre tract and entitled to exclusive possession thereof and (2) Jennings is not an owner of any undivided interest in the property and not entitled to possession of any part of it. Thereafter, the parties entered into a Rule 11 agreement to submit the case to the trial court

pursuant to Texas Rule of Civil Procedure 263 and filed position statements and supporting documentary evidence. The trial court initially found for Jennings, but later, reconsidered its ruling and rendered a judgment in Piazza's favor along with written findings of fact and conclusions of law. This appeal followed.

**DEED CONSTRUCTION**

In her first and second issues, Jennings argues that the evidence is insufficient to support the trial court's judgment.

**Standard of Review and Governing Law**

In construing the meaning of a deed, our primary duty is to ascertain the intent of the parties as provided in the four corners of the document. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Hausser v. Cuellar*, 345 S.W.3d 462, 466–67 (Tex. App.–San Antonio 2011, pet. denied). To do this, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the agreement, even if different parts of the deed appear inconsistent or contradictory. *White*, 819 S.W.2d at 462; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We must assume the parties to the instrument intended every clause to have some effect; therefore, the language of the deed should be interpreted so that no provision is rendered meaningless. *See White*, 819 S.W.2d at 461; *Coker*, 650 S.W.2d at 393. Each word and phrase should be given its plain, grammatical meaning unless doing so would clearly defeat the parties' intent. *Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex. App.–Eastland 2007, no pet.). No provision of the deed should be struck unless an irreconcilable conflict exists which causes one part of the deed to destroy another part. *Id.*

A deed may be either ambiguous or unambiguous, and this determination is a question of law. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996). To make this determination, the trial court must examine the deed as a whole in light of the circumstances present at the time of its execution. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *Hausser*, 345 S.W.3d at 467. If after applying the pertinent rules of construction, a deed is subject to two or more reasonable interpretations, then the deed is ambiguous, and a fact issue exists as to the parties' intent. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589; *Hausser*, 345 S.W.3d at 467. However, an ambiguity does not arise merely

3

because the parties advance conflicting interpretations of the deed's language; instead, for an ambiguity to exist, both interpretations must be reasonable. ***Hausser***, 345 S.W.3d at 467.

A deed is unambiguous when it is so worded that it can be given "a certain or definite legal meaning or interpretation." ***Coker***, 650 S.W.2d at 393. The interpretation of an unambiguous deed is a question of law, and we conduct a de novo review of the trial court's construction. ***Altman v. Blake***, 712 S.W.2d 117, 118 (Tex. 1986); ***Range Resources Corp. v. Bradshaw***, 266 S.W.3d 490, 493 (Tex. App.–Fort Worth 2008, pet. denied). When conducting a de novo review, we exercise our own judgment and redetermine each issue according no deference to the trial court's decision. ***Quick v. City of Austin***, 7 S.W.3d 109, 116 (Tex. 1998); ***Bradshaw***, 266 S.W.3d at 493. We perform that review without considering parol evidence. ***Stewman Ranch, Inc. v. Double M. Ranch, Ltd.***, 192 S.W.3d 808, 810 (Tex. App.–Eastland 2006, pet. denied).

**Discussion**

In the instant case, neither party contends that the deeds relevant to our analysis are ambiguous. Yet each party advances conflicting interpretations of some of the language contained therein. *Cf.* ***Columbia Gas Transmission Corp.***, 940 S.W.2d at 589 ("An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract"). Based on our review of the relevant instruments, we agree that they are unambiguous.

Jennings's claim to the 59 acre tract is based on her contention that that tract was Sydney and Lela's community property. The bases of her argument rest on her interpretation of the language of the 1916 deed, the 1921 deed, and the 1931 deed.

*1916 Deed*

By virtue of the 1916 deed, Able, Tommy, Lizzie, and Julia sold their undivided interests in the 200 acre tract to Lela, Susi, Annie, and Minnie for $7,500.00. The deed provided, in pertinent part, as follows:

> It is hereby further understood and agreed that we hereby relinquish and transfer all claims against both real estate and personal property of E.M. Rhodes deceased, and Mrs. M.M. Rhodes.

> It is also hereby understood that said real estate and personal property is to be held as the community property of Mrs. M.M. Rhodes, Annie Rhodes, Minnie Harris, Lela Rhodes and Susie Rhodes, till the deceased of Mrs. M.M. Rhodes when this deed shall become valid and absolute in its effect and reading.

The trial court found that this deed resulted in Lela's acquiring a one-eighth undivided interest in the 200 acre tract in September 1916. Jennings argues that the above-quoted language indicates the grantors' intent that their respective interests in the 200 acre tract not be conveyed until Mary's death.

In general, characterization of property is determined by the time and circumstances of its acquisition, often referred to as the "inception of title" doctrine. *Rivera v. Hernandez*, 441 S.W.3d 413, 420 (Tex. App.–El Paso 2014, pet. denied). Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *Id.*; *see also John Hancock Mut. Life Ins. Co. v. Bennett*, 128 S.W.2d 791, 795 (Tex. 1939). In accordance with this doctrine, if the inception of title predated the marriage, then the property may be characterized as separate property, but if the inception of title occurred after the marriage began, then the property is generally considered to be community property.[2] *Attaguile v. Attaguile*, No. 08-16-00222-CV, 2018 WL 4659580, at *6 (Tex. App.–El Paso Sept. 28, 2018, no pet.) (op.).

It is apparent from the language of the first paragraph set forth above that the grantors intended, then and there, to transfer the subject property to the grantees. This present intent to transfer for valuable consideration of $7,500.00 indicates that inception of title occurred, in Lela's case, before she married Sidney. The second paragraph acknowledges Mary's then existing community property interest in the property.[3] It further sets forth that Mary's community property interest shall continue until she is deceased, whereupon the deed "shall become valid and absolute in its effect and reading." We construe this language not as an indication that the deed is a testamentary instrument, but rather as an acknowledgment of Mary's life estate in the property. *See, e.g.*, *Chrisman v. Wyatt*, 26 S.W. 759, 759 (Tex. Civ. App.–Fort Worth 1894, writ ref'd) (document was not a will despite statement that "at my death" this property belongs to grantee); *Carpenter v. Hanning*, 34 S.W. 774, 775 (Tex. Civ. App.–Austin 1896, writ ref'd) (document construed as deed rather than will despite language that grantor would remain in possession of

---

[2] In Texas, all property acquired by a spouse during the marriage generally belongs to the marital community, except property acquired by gifts, devises, or descent. *In re Knott*, 118 S.W.3d 899, 902 (Tex. App.–Texarkana 2003, no pet.).

[3] We cannot ignore the list of grantees' names following the reference to Mary's community property interest. However, Jennings has not cited to, nor is this court aware of, any authority permitting a grantor, by deed, to preemptively characterize the property conveyed as community property when one of the grantees is an unmarried individual. We instead rely on the inception of title doctrine to determine the proper characterization of the property at issue.

property and enjoy rents and profits arising therefrom during his life and, then, property immediately would pass into possession of grantee in absolute fee); *see also, e.g.*, **Bombarger v. Morrow**, 61 Tex. 417, 418 (1884) (document stating that grantor reserved to himself right to manage and control land and premises and have, enjoy, and dispose of occupancy, rents, and profits of land and premises during his natural life was a deed rather than testamentary instrument effective upon grantor's death). Thus, we hold that the 1916 deed served as of its execution to transfer the grantors' respective interests in the 200 acre tract to the grantees, subject to Mary's life estate.

### 1921 Partition Deeds

We next consider the effect of the 1921 handwritten deeds by which Lela, Susi, Annie, and Minnie partitioned the 200 acre tract. By the time of this agreement, Lela was married to Sidney. In one of the deeds, Lela acquired what amounted to a one-half undivided interest in the 59 acre tract "for and in consideration of the sum of Twenty-one hundred and seventy five ($2,175.00) DOLLARS . . . paid and secured to be paid, by Lela Neill in real estate values, the receipt of which is hereby fully acknowledged . . . ." While Jennings describes the consideration for this transaction as "cash," her characterization ignores the language in the deed that the consideration is to be paid "in real estate values." Thus, it is apparent from the plain meaning of the language used that Lela, Susie, Annie, and Minnie, sought to partition their respective one-eighth undivided interests in the 200 acre tract so that each could have a one-half undivided interest in smaller parcels of that tract. In Lela's case, the consideration she paid was her one-eighth undivided interest in the 200 acre tract, for which a cash value was given. But despite the attribution of a cash value to this consideration, the consideration itself was her interest in the 200 acre tract, which she acquired prior to her marriage to Sidney. *See* **Hernandez**, 441 S.W.3d at 420. As a result, we conclude that Lela's resulting one-half undivided interest in the 59 acre tract was her separate property. *See* **id.**; *see also* **Taylor v. Hollingsworth**, 169 S.W.2d 519, 522 (Tex. Civ. App.–Galveston 1943), *aff'd*, 176 S.W.2d 733 (Tex. 1943) (property acquired in exchange for separate property also is separate property).

### 1931 Deed

We next consider the effect of the 1931 deed, in which Mary, individually and as executrix under the last will and testament of E.M. Rhodes, for "one dollar and other valuable considerations[,]" conveyed to Annie, Susie, and Lela, her undivided one-half interest in the 200

acre tract.  As set forth above, the deed also set forth, in pertinent part, that it and the conveyances were not absolute until Mary's death, at which time, Lela would receive 59 acres of the tract therein described.  Jennings argues that this transfer from Mary to Lela for valuable consideration, which occurred during Lela's marriage to Sidney resulted in Sidney's obtaining a community property interest in this one-half undivided interest in the 59 acre tract.  The trial court found that the 1931 deed conveyed the land to Lela as a gift.

A gift is a voluntary transfer of property to another made gratuitously and without consideration.  *In re Marriage of Moncey*, 404 S.W.3d 701, 710 (Tex. App.–Texarkana 2013, no pet.).  Three elements are required to establish the existence of a gift:  (1) intent to make a gift; (2) delivery of the property, and (3) acceptance of the property.  *Id.*

As Jennings asserts, the plain language of the 1931 deed unambiguously sets forth that the property was transferred to Mary's daughter, Lela, in exchange for a stated consideration of one dollar.  The deed's plain language further sets forth that Mary sought presently to transfer the property while reserving a life estate for herself.[4]  Thus, we begin with the presumption that the property acquired by Lela during her marriage to Sidney is community property.  *See Roberts v. Roberts*, 999 S.W.2d 424, 431 (Tex. App.–El Paso 1999, no pet.).

However, a presumption of separate property arises where, as here, property is deeded from a parent to a child or children; it is presumed that a gift was intended.  *See Richardson v. Laney*, 911 S.W.2d 489, 492 (Tex. App–Texarkana 1995, no writ); *Kyles v. Kyles*, 832 S.W.2d 194, 197 (Tex. App.–Beaumont 1992, no writ); *cf. Roberts*, 999 S.W.2d at 431.  This separate property presumption is rebuttable, but the person seeking to rebut the presumption must prove a lack of donative intent by clear and convincing evidence at the trial court level.  *Kyles*, 832 S.W.2d at 197 (citing *Somer v. Bogart*, 749 S.W.2d 202, 204 (Tex. App.–Dallas), *writ denied*, 762 S.W.2d 577 (Tex.1988)).  The clear and convincing standard does not alter the standard of review to be applied at the appellate court level for sufficiency of the evidence challenges.  *Faram v. Gervitz–Faram*, 895 S.W.2d 839, 842 (Tex. App.–Fort Worth 1995, no writ); *Oadra v. Stegall*, 871 S.W.2d 882, 892 (Tex. App.–Houston [14th Dist.] 1994, no writ).  The requirement of clear and convincing evidence merely is another way of stating that a cause of action must be supported by factually sufficient evidence.  *Laney*, 911 S.W.2d at 492.

---

[4] *See, e.g.*, *Chrisman*, 26 S.W. at 759; *Carpenter*, 34 S.W. at 775; *see also, e.g.*, *Morrow*, 61 Tex. at 418.

In the instant case, Jennings argues that "[t]here should be no question that the 1931 deed . . . was for a paid consideration at the time when Lela . . . was married to Sidney[.]"  However, as discussed above, the fact that the transfer was made from parent to child creates a presumption of separate property and shifts the burden of proof to Jennings.  *See id.*; *Kyles*, 832 S.W.2d at 197.

Based on our review of the record, there is no evidence that this stated consideration, was, in fact, paid.  *See Bently v. Andrewartha*, 565 S.W.2d 590, 592 (Tex. Civ. App.–Austin 1978, no writ) (holding parol evidence admissible to prove amount of consideration to be paid where deed recited ten dollars and other valuable consideration); *Latham v. Dement*, 409 S.W.2d 429, 433 (Tex. Civ. App.–Dallas 1966, writ ref'd n.r.e.) (same); *see, e.g.*, *Hall v. Barrett*, 126 S.W.2d 1045, 1047 (Tex. Civ. App.–Fort Worth 1939, no writ) (despite ten dollar recital of consideration's being customary in deeds of gift, argument against finding that gift made unfounded where no attempt made to prove that grantees actually paid grantor such sum); *but see Johnson v. Driver*, 198 S.W.3d 359, 361 (Tex. App.–Tyler 2006, no pet.) (in case where deed was not a transfer from parent to child and, thus, no presumption of gift, unambiguous deeds reciting consideration proved conveyances were bargained-for-exchanges and parol evidence inadmissible to establish transaction actually intended to be gifts).  Jennings has not cited to, nor has our review of the record revealed, any evidence tending to rebut the presumption that, in the 1931 deed, Mary intended to make a gift of the 59 acre tract to Lela.

We, therefore, conclude that the gift made by Mary to Lela in 1931 resulted in Lela's obtaining an undivided interest in the 59 acre tract, subject to Mary's life estate, which ended upon Mary's death in the late 1930s.  As a result, Sidney had no community property interest in the 59 acre tract, to which Jennings would be entitled upon his death.

Because the deeds relevant to our inquiry are unambiguous, we have conducted a de novo review of the trial court's construction thereof.  *See Blake*, 712 S.W.2d at 118.  Having done so, we hold that the trial court properly construed the deeds and that its constructions supports its findings of fact and conclusions of law.  As to the 1931 deed, because the transfer was from a parent to a child, it is presumed that Mary intended to make a gift to Lela, and we have considered the record to determine if any clear and convincing parol evidence exists to rebut that presumption. Having found none, we further hold that the evidence of record is insufficient to rebut the presumption that her intention was to make a gift.  Jennings's first and second issues are overruled.

8

## **DISPOSITION**

Having overruled Jennings's first and second issues, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered June 28, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 28, 2019

NO. 12-18-00253-CV

**CAROLYN NEILL JENNINGS,**
Appellant
V.
**ANTHONY JOSEPH PIAZZA, JR.,**
Appellee

Appeal from the 123rd District Court
of Shelby County, Texas (Tr.Ct.No. 16CV33571)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **CAROLYN NEILL JENNINGS,** for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*