**MOON ROYALTY, LLC, Appellant,**

v.

**BOLDRICK PARTNERS d/b/a Statewide Minerals Co., Appellee.**

No. 11–06–00226–CV.

Court of Appeals of Texas, Eastland.

Aug. 9, 2007.

Opinion Overruling Rehearing Oct. 25, 2007.

Matthew L. Standard, Kirk & Chaney, Oklahoma City, OK, G. Ben Bancroft, Big Spring, for appellant.

James P. Boldrick, Boldrick, Clifton & Holland, P.C., Midland, James W. Essman, Shafer, Davis, O'Leary & Stoker, Odessa, for appellee.

Panel consists of: WRIGHT, C.J., STRANGE, J., and HILL, J.*

## OPINION

RICK STRANGE, Justice.

This is a declaratory judgment action to construe assignments of royalty interest. Boldrick Partners d/b/a Statewide Minerals Co. filed suit against Moon Royalty, LLC, and others seeking a declaration construing assignments from Statewide to Moon, a constructive trust on disputed royalty payments, and attorney's fees. The parties filed cross motions for summary judgment on the proper construction of the assignments. The trial court granted Statewide's motion, finding that it had not conveyed the disputed interest. The trial court subsequently held an evidentiary hearing and awarded Statewide attorney's fees through trial and conditional attorney's fees in the event of an appeal. We reverse and render in part and reverse and remand in part.

## I. Background Facts

Statewide offered to sell four lots of royalty and overriding royalty interests at auction. The lots were grouped by county. Moon was the successful bidder on three lots, and Dwight Snell & Associates acquired the fourth. Statewide executed assignments, dated June 10, 1996, to Moon and Snell.[1] The assignments provided:

Assignor does hereby Transfer, Assign, Convey and Deliver unto Assignee all of Assignors royalty, overriding royalty and associated mineral interests as specifically described on Exhibit "A" (hereinafter called "Interests") in and to the oil and gas wells described therein (hereinafter called "Properties"). It is specifically understood between Assignor and Assignee that Assignor may own other interest in the Properties which are not intended to be covered by this Assignment and such Interest are specifically excluded here from.

The assignment to Snell had an effective date of June 12, 1996. The assignments to Moon were effective June 1, 1996. The form of the assignments was otherwise identical.

On July 11, 1996, Statewide executed corrected assignments to Snell and Moon.[2] The corrected assignments were all made effective June 1, 1996. The only other change was the addition of language to the granting clause. That clause (with the additional language highlighted) read:

Assignor does hereby Transfer, Assign, Convey and Deliver unto Assignee all of

---

* John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth sitting by assignment.

1. The parties have advised us that there were separate assignments for each county. The record contains the assignment to Snell but only one of the three assignments to Moon. Because there is no dispute that the relevant

language was identical in each assignment, we will operate on that assumption.

2. The record contains two of the three corrected assignments to Moon. For the reasons expressed previously, we will assume that the third contained the same language.

Assignors royalty, overriding royalty and associated mineral interests as specifically described on Exhibit "A" (hereinafter called "Interests") in and to the oil and gas wells described therein (hereinafter called "Properties") **and in and to the lands (hereinafter called "Lands").** It is specifically understood between Assignor and Assignee that Assignor may own other interest in the Properties which are not intended to be covered by this Assignment and such interest are specifically excluded herefrom. (emphasis added)

That same month, Snell conveyed the interests it acquired from Statewide to Moon.

The "Exhibit A" referenced in the original and corrected assignments consisted of a table with the following headings:

**ASSIGNOR ASSIGNEE DATE DESCRIPTION COUNTY STATE WELL NAME RI ORRI BOOK PAGE**

For each listed interest, the tables described the conveyance to Statewide by naming the assignor, the date of the assignment, and the volume and page where the assignment was recorded. The description column included section and block information for each interest. The RI and ORRI columns identified the royalty or overriding royalty percentages being assigned.

This dispute concerns two wells, the McCartor # 309C in Ochiltree County and the Royston–Smith Unit # 1–A in Fisher County. Neither well was listed by name in Exhibit A, but the land on which the wells were located is. The trial court held that, as a matter of law, the corrected assignments did not convey any interest in either well. The trial court subsequently conducted a bench trial to address all remaining issues, and its final judgment included an award of attorney's fees through trial and a conditional award of appellate attorney's fees.

## II.  *Issues*

Moon challenges the trial court's summary judgment ruling and final judgment with four issues. Moon argues that the trial court misinterpreted the assignments or, alternatively, that the assignments were ambiguous, and that the trial court erroneously awarded Statewide attorney's fees. In its fifth issue, Moon argues that, if this court affirms the trial court's judgment, Statewide was not entitled to attorney's fees. In light of our holding on the first and third issues, we do not reach the fifth issue. Tex.R.App. P. 47.1.

## III.  *Analysis*

### A.  *Standard of Review.*

■  We will apply the well-recognized standard of review for traditional summary judgments. Questions of law are reviewed de novo. *St. Paul Ins. Co. v. Tex. Dep't of Transp.,* 999 S.W.2d 881 (Tex.App.-Austin 1999, pet. denied). When cross motions are filed and the trial court grants one and denies the other, we review all issues presented and enter the judgment that the trial court should have entered. *Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a

matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex.1985); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979).

### B. Are the Assignments Ambiguous?

■ Both parties tendered extrinsic evidence to the trial court explaining why the additional language was added to the granting clause.[3] We may not consider this evidence absent a determination that the assignments are not fully integrated or that they are ambiguous. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex.1981) (parole evidence rule circumscribes the use of extrinsic evidence when interpreting an integrated document); *Middleton v. Broussard*, 504 S.W.2d 839, 841 (Tex.1974) (when a document is unambiguous, the parties' intent is determined from the document's language).

■ Neither party contends that the assignments are not fully integrated. Thus, we need only determine if they are ambiguous, which is a question of law. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex.1962). A document is ambiguous when the application of the pertinent rules of interpretation to the face of the instrument leaves the court genuinely uncertain which one of two or more meanings is the proper meaning. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). Lack of clarity does not create an ambiguity. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994). Our primary goal is to ascertain the parties' true intention as expressed in the document. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex.1991). The intent that governs, however, is not the intent that the parties meant but failed to express but, rather, the intent that is expressed. *Gore Oil Co. v. Roosth*, 158 S.W.3d 596, 599 (Tex.App.-Eastland 2005, no pet.).

■ Texas courts have developed rules of interpretation to determine a contract's meaning and canons of construction to determine its legal effect. The rules of interpretation may be utilized to determine if an agreement is ambiguous, but the canons of construction do not apply absent a determination of ambiguity. *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 811 (Tex.App.-Eastland 2006, pet. denied); *see also* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction*, 24 TEX. TECH L.REV. 1, 110–11 (1993) (canons such as "construe against the grantor" should not replace rational thought when reading a written instrument or be used if the document's language is clear).

The rules of interpretation include:

1. Construe the agreement as a whole;
2. Give each word and phrase its plain, grammatical meaning unless it definitely appears that such meaning would defeat the parties' intent;
3. Construe the agreement, if possible, so as to give each provision meaning and purpose so that no provision is rendered meaningless or moot;
4. Express terms are favored over implied terms or subsequent conduct; and
5. Surrounding circumstances may be considered-not to determine a party's subjective intent—but to determine the appropriate meaning to as-

---

**3.** Statewide argues that the additional language was added to address Moon's concern that the assignments conveyed only a well bore interest and not the entire proration unit. Moon agrees that it was concerned about receiving a well bore only assignment but contends that, when this situation was discussed, Statewide represented that the assignments included all revenue attributable to the lands covered by any listed interest.

cribe to the language chosen by the parties.

Mark K. Glasser & Keith A. Rowley, *On Parol: The Construction and Interpretation of Written Agreements and the Role of Extrinsic Evidence in Contract Litigation*, 49 BAYLOR L.REV. 657, 664–82 (1997).

■ Utilizing these rules of interpretation, the assignments are not ambiguous. Statewide contends that, because the granting clause was limited to the interests *"as specifically described on Exhibit 'A'"* and because the clause referenced the possibility that Statewide might own other interest in *"the Properties which are not intended to be covered by this Assignment,"* the corrected assignments covered only royalty interests in the listed wells. Statewide argues that, if the assignments covered all of its interests in a particular tract, then there would be no reason to describe the specific fractional interests Moon was to receive or to describe the specific wells included.

Statewide's interpretation would render the additional language meaningless. The granting clause originally contained two defined terms: Interests and Properties. Properties was defined as Statewide's interests in the oil and gas wells described in Exhibit A and Interests as the royalty described in Exhibit A. The revised granting clause added a third defined term: Lands. Originally, the assignments transferred Statewide's Interests in the Properties. The corrected assignments transferred Statewide's Interests in the Properties *and* the Lands. Because Lands was a separately defined term and because Statewide conveyed its interests in both the Properties and the Lands, the term Lands must refer to something other than the listed wells to have any meaning. Utilizing the plain meaning of the word land, and looking at the four corners of the corrected assignments, this term necessarily refers to the tracts described by block and section in Exhibit A.

This interpretation gives meaning and purpose to both the original and additional language. If Properties refers to the listed wells and Lands the listed tracts, then Statewide assigned royalty interest in the listed acreage—whether a well was present or not—and in the listed wells—whether they are located on one of the described tracts or not.

Nor are we persuaded by Statewide's argument that the reference to other interests Statewide might own is further indication that the corrected assignment was limited to the listed wells. The reference to other interests Statewide might own was limited to other interests Statewide might own in the "Properties." Because Properties was defined as the oil and gas wells listed in Exhibit A, the reference to other interests owned simply indicated that Statewide might own other interests in the described wells. It has no bearing on the meaning of the term Lands.

Moreover, Statewide's position is in response to a broader argument than Moon advances. The assignments describe specific conveyances into Statewide. The reference to other interest in the Properties left open the possibility that there were other unlisted conveyances into Statewide. If so, Moon does not claim that it acquired any portion of that interest. By specifying the specific fractional interest transferred, the assignments also left open the possibility that a conveyance into Statewide conveyed a greater percentage of ownership than was being assigned by Statewide. If so, we do not construe the assignments to convey a greater ownership percentage than that listed in the RI and ORRI columns.

Finally, Statewide argues that it is impossible to determine what fractional inter-

est Moon received in the Royston–Smith Unit # 1–A well or the McCartor # 309C well. This is incorrect. Moon received whatever fractional interest was listed for the tracts upon which the wells are located. The record suggests that the Royston–Smith Unit # 1–A well is in Section 1, Block 21, T & P Survey, Fisher County, Texas. If so, Moon received the .0025 overriding royalty interest Statewide acquired from Craig A. Jordan. Similarly, the record suggests that the McCartor # 309C well is in Section 309, Block 43, J & TC Survey, Ochiltree County, Texas. If so, Moon received the .01625 overriding royalty interest that Statewide acquired from the John W. McDowell Estate.

Moon's first issue is sustained. This makes it unnecessary to address Moon's second issue. Because we have granted Moon's request for substantive relief, we also sustain Moon's third issue and reverse the trial court's award of attorney's fees and remand this case for further consideration of that issue. This holding makes it unnecessary to address Moon's fourth and fifth issues. Rule 47.1.

## IV. *Holding*

The trial court's summary judgment and final judgment are reversed. Judgment is rendered that Moon acquired Statewide's interest in the Royston–Smith Unit # 1–A well and the McCartor # 309C well to the extent that interest was acquired by Statewide in a conveyance listed in the Exhibit A to the corrected assignments and limited to the percentage of ownership listed in the Exhibit A for that conveyance. The case is remanded to the trial court for further consideration of the attorney's fee award.

## OPINION ON MOTION FOR REHEARING

Boldrick Partners d/b/a Statewide Minerals Co. has filed a motion for rehearing asking this court to reconsider our August 9, 2007 opinion. In that motion, Statewide argues that this court erred by considering extrinsic evidence to interpret documents that we found were unambiguous and fully integrated. Statewide bases this on language in our opinion where we wrote that the "record suggests" that the Royston–Smith Unit # 1–A Well is in Section 1, Block 21, T & P Survey, Fisher County, Texas.

Our comment was made in response to Statewide's argument that it was impossible to determine what fractional interest the corrected assignments conveyed to Moon in the # 1–A Well. As we indicated, Moon received whatever fractional interest the corrected assignment described for the tract upon which that well is located. Statewide itself represented to this court in its principal brief that the # 1–A Well was in Fisher County. That brief included a "chain of title" offered to show the court how the parties acquired their interest. Under the heading "Royston–Smith Unit # 1–A Well (Fisher County, TX)," Statewide described three conveyances into itself. Two were in the Lawrence G.W. # 330, Block 4 and included the Royston State Well. The third was from Craig A. Jordan; covered Section 1, Block 21, T & P Survey; and included the Royston–Smith # 1 Well.[1] The similarity of names suggested to us that the Royston–Smith # 1 Well and the Royston–Smith # 1–A Well were in the same tract. Our comment was intended as illustrative and merely described what interest Moon received if the # 1–A Well is in Section 1,

---

**1.** The conveyances described by Statewide in its brief can be found at pages 126, 128, and 130 of the clerk's record.

Block 21. It is not a holding that the # 1–A Well is in Section 1, Block 21.

Statewide's motion is overruled.