In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00597-CV


____________________



DERWEN RESOURCES, LLC and


SHRINERS HOSPITALS FOR CHILDREN, INC., Appellants



V.



CARRIZO OIL & GAS, INC., Appellee






On Appeal from the 75th District Court


Liberty County, Texas


Trial Cause No. CV72054






MEMORANDUM OPINION


 This dispute involves the interpretation of a deed conveying an interest in a certain
two hundred and twenty-nine acre tract situated in Liberty County ("229 acre tract"). A
proper analysis of the issues warrants a discussion of the chain of title. 

 The record establishes that B.F. Louis ("Louis") obtained his ownership interest in the
229 acre tract as a result of the following conveyances:

 (1) deed from Hattie Breeden which was dated November 29, 1948,
recorded in volume 323, page 344 of the deed records of Liberty
County, Texas; 


 (2) deed from Clara S. Adams, dated June 30, 1949, and recorded in 
volume 318, page 314 of the deed records of Liberty County, Texas; 


 (3) deed from Lamar Hart, dated June 30, 1949, and recorded in volume
318, page 313 of the deed records of Liberty County, Texas; 


 (4) deed from Mary Foley Cruse, dated July 14, 1949, and recorded in
volume 318, page 316 of the deed records of Liberty County, Texas. 


All four deeds purported to convey ". . . all the undivided interest of the grantor . . ." in at
least three tracts of land, described and set forth in each of the four deeds as follows:

 FIRST TRACT: Being all that certain tract of land containing 229
acres, more or less, and being the same land which was conveyed by Sadie L.
McManus to W.D. Wilcox, by deed dated March 16, 1907, of record in
Volume 20, page 52, Deed Records of Liberty County, Texas, to which
reference is hereby made for all purposes.


 SECOND TRACT: Being all that certain tract of land containing about
541 acres, more or less, and more fully described in deed from Hugh Jackson
to W.D. Wilcox dated July 31, 1901, of record in Volume Y, page 381, and by
deed from R. C. McManus et al dated August 31, 1901, of record in Volume
30, page 232, and by deed from W. P. T. McManus dated September 12, 1901,
of record in Volume 1, page 397, and by deed from V. R. McManus dated
January 22, 1903, of record in Volume 5, page 206, Deed Records of Liberty
County, Texas, to which reference is hereby made for all purposes.

 THIRD TRACT: Being all that certain tract of land containing 229
acres, more or less, and being the same land as described in deed dated
September 27, 1901, from C. R. Cummings to W. D. Wilcox, of record in
Volume Z, page 598, et seq., Deed Records of Liberty County, Texas, to which
reference is hereby made for all purposes.


The Long-Massot Deed

 In 1956, Louis conveyed an interest in the 229 acre tract to Anna Mayes Long and
Barbara M. Massot (the "Long-Massot Deed" or "Deed"). Exactly what interest Louis
conveyed is at the center of this dispute. The Deed contained the following language:

 I, B.F. Louis, . . . do hereby grant, sell and convey unto the said Mrs. Anna
Mayes Long, a feme sole, and Mrs. Barbara M. Massot, as and for her separate
use and estate, all my interest in and to all that certain land, as hereinafter
described, situated in the counties of Liberty and Chambers, State of Texas, to-wit:


 . . . . 


 2. Being and comprising all the undivided interest of the grantor, Clara
S. Adams, described in deed from Clara S. Adams to B.F. Louis, dated June
30, 1949, recorded in Deed Records of Chambers County, Texas, Vol. 118, pp.
506, et seq, and in Deed Records of Liberty County, Texas, Vol. 318, p. 314,
to which reference is made, and therein set out as follows[.] 


 . . . .


 3. Being and comprising all the undivided interest of the grantor,
Lamar Hart, described in the deed from Lamar Hart to B.F. Louis, dated June
30, 1949, recorded in Deed Records of Chambers County, Texas, Vol. 118, pp.
504, et seq, and in Deed Records of Liberty County, Texas, Vol. 318, p. 313,
to which reference is made, and therein set out as follows[.] 


 . . . .


 4. Being and comprising all the undivided interest of the grantor, Mary
Foley Cruse, described in deed from Mary Foley Cruse to B. F. Louis, dated
July 14, 1949, recorded in Deed Records of Chambers County, Texas, Vol.
118, pp. 508, et seq., and in Deed Records of Liberty County, Texas, Vol. 318,
p. 316, to which reference is made, and therein set out as follows[.]


 . . . .


 It being my intention to hereby convey all my entire interest in the
above described land conveyed to me as aforesaid, subject to all easements and
leases of every kind effective upon said land.


The Long-Massot Deed contains a specific description of the three tracts under each granting
paragraph that is identical to the descriptions in the original deeds Louis obtained from
Adams, Hart and Cruse. However, the Long-Massot Deed does not include a specific
description of the same three tracts obtained in 1948 from Hattie Breeden (hereinafter
referred to as the "Breeden Deed"), but instead references other properties conveyed by
Breeden to Louis. 

Carrizo's Working Interest

 It is undisputed that Georges F. Massot, Jr. and Thereze Renee Caldwell succeeded
to all of the interest in the 229 acre tract that was conveyed to Anna Mayes Long and Barbara
M. Massot under the Long-Massot Deed. Thereze and Georges executed oil, gas, and
mineral leases with PFM, LLC covering their mineral interests in the 229 acre tract. As the
result of an assignment in 2005, Carrizo acquired the leasehold working interest in the two
mineral leases. Carrizo has drilled two oil and gas wells and formed two units encompassing
portions of the 229 acre tract as a result of the leases. 

The Shriners Lease

 On December 16, 2004, the Shriners Hospitals for Children ("Shriners") delivered to
Derwen Resources, LLC ("Derwen") an oil and gas lease purportedly covering a portion of
the same mineral interest in the 229 acre tract at issue in the underlying suit ("Shriners
Lease"). The lease was signed by Derwen on January 19, 2005, and signed by Shriners on
February 18, 2005. Carrizo asserts that Derwen purchased the "alleged title defect" by hiring 
a petroleum landman who researches chains of title looking for alleged defects. (1) Derwen
attached to its Response and Motion for Partial Summary Judgment the affidavit of John
Pritchard, an independent landman. Pritchard stated that he "ran the chain of title" to the
interest owned by Shriners in the 229 acre tract at the request of Derwen Resources. 
According to Pritchard, Shriners and Derwen derived their claim of title pursuant to the
undivided interest which Louis had obtained from Hattie Breeden in the Breeden Deed. 
After researching the documents in the chain of title, Pritchard concluded that there was no
conveyance by Louis in the Long-Massot deed of the undivided interest in the 229 acre tract
which he obtained from Hattie Breeden. 

 Pritchard further stated that after Louis died in 1957, all of his residuary estate,
including his wife's community interest in such property, passed to the Arabia Temple
Crippled Children's Clinic (which ultimately merged with Shriners Hospitals for Children)
pursuant to the terms of his Will. (2) Pritchard concluded, that

 [s]ince the undivided interest which B.F. Louis had acquired in and to the
mineral estate in and under the 229 Acre Tract from Hattie Breeden was not
included within the specific bequests in his Will, such interest was included in
and part of his residuary estate and therefore passed to [Shriners Hospitals for
Children] following the termination of the trust established by his Will for his
wife. 


According to Pritchard, the Shriners Lease to Derwen covered all of Shriners' undivided
interest in and to the oil and gas in and under the 229 acre tract at issue in the underlying suit. 
 Following the execution of the Shriners Lease, Derwen contacted Carrizo and asserted
that it had acquired a fifteen percent (15%) mineral interest in the 229 acre tract. Carrizo
searched the official records of Liberty County, Texas, and found that Derwen had recorded
the Shriners Lease, purportedly placing a cloud of title on Carrizo's working interest. 
Carrizo ultimately filed suit to resolve the title dispute. 

STANDARD OF REVIEW AND ISSUES


 Carrizo filed a motion for summary judgment arguing the Long-Massot Deed conveys
all Louis's interest in the 229 acre tract. Derwen and Shriners responded and filed a partial
motion for summary judgment arguing they own an undivided interest in the surface and the
minerals in and under the 229 acre tract that was not conveyed by Louis in the Long-Massot
Deed. The trial court entered final summary judgment in favor of Carrizo and against
Derwen and Shriners. The court found that Carrizo was in possession and entitled to
possession of 100% of the leasehold mineral interest in the 229 acre tract previously owned
by Louis, and that Derwen "has no title or interest in the leasehold mineral estate of the 229
acre tract and that Shriners has no interest in the mineral estate of the 229 acre tract." On
appeal, Derwen and Shriners (hereinafter collectively referred to as "Derwen") argue that
the trial court erred (1) in granting summary judgment for Carrizo because the Long-Massot
Deed is ambiguous, (2) in adopting Carrizo's construction of the Long-Massot Deed, and (3)
in not entering partial summary judgment in favor of Derwen and Shriners. Carrizo responds
that (1) the Long-Massot Deed is not ambiguous, (2) the Long-Massot Deed conveyed all of
Louis's interest in the 229 acre tract, and (3) the trial court did not err in denying the partial
summary judgment requested by Derwen and Shriners. 

 When cross motions for summary judgment are filed and the trial court grants one and
denies the other, we review all issues presented and enter the judgment the trial court should
have entered. Moon Royalty, LLC v. Boldrick Partners, 244 S.W.3d 391, 393 (Tex. App.--Eastland 2007, no pet.). This court "must consider all the evidence in the light most
favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant,
and determine whether the movant proved that there were no genuine issues of material fact
and that it was entitled to judgment as a matter of law." Id. at 393-94 (citing Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546 (Tex. 1985)).

ANALYSIS


 Whether a contract is ambiguous is a question of law for the court to decide. 
Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996). The question
of ambiguity must be decided by "examining the contract as a whole in light of the
circumstances present at its execution." Savage v. Doyle, 153 S.W.3d 231, 234 (Tex. App.--Beaumont 2004, no pet.) (citing Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
940 S.W.2d 587, 589 (Tex. 1996)). "A contract ambiguity may be either patent or latent." 
Arredondo v. City of Dallas, 79 S.W.3d 657, 666 (Tex. App.--Dallas 2002, pet. denied). "A
patent ambiguity is one evident on the face of the contract, while a latent ambiguity exists
when a contract is unambiguous on its face, but fails because of some collateral matter that
creates an ambiguity." Id. (citing Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d
517, 520 (Tex. 1995)). "Patent ambiguity of a contract may be considered for the first time
on appeal from a motion for summary judgment." Id. Therefore, Derwen's failure to assert
ambiguity in the trial court is not dispositive of the issue on appeal. We must consider
whether the Long-Massot Deed is ambiguous on its face. If we find the language to be
unambiguous, we may construe the deed as a matter of law. See generally Westwind
Exploration, Inc. v. Homestate Sav. Ass'n, 696 S.W.2d 378, 381 (Tex. 1985) (citing City of
Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968)).

 A contract is not ambiguous when it can be given a definite or certain meaning as a
matter of law. Columbia Gas Transmission Corp., 940 S.W.2d at 589. If a written
instrument is so worded that it can be given a "certain or definite legal meaning or
interpretation," the court will construe the contract as a matter of law. Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983). If a contract is subject to two or more reasonable
interpretations after applying the pertinent rules of construction, the contract is ambiguous,
and a fact issue exists on the parties' intent. Columbia Gas Transmission Corp., 940 S.W.2d
at 589. However, "[a]n ambiguity does not arise simply because the parties advance
conflicting interpretations of the contract. For an ambiguity to exist, both interpretations
must be reasonable." Id. (citations omitted). 

 In construing a deed, our primary duty is to ascertain the intent of the parties as
expressed in the document. Luckel v. White, 819 S.W.2d 459, 461 (Tex. 1991). In doing
so, we are to examine and consider the entire writing in an effort to harmonize and give
effect to all the provisions of the agreement. Coker, 650 S.W.2d at 393. The parties to an
instrument intend every clause to have some effect; therefore, the language of the deed
should be interpreted so that no provision is rendered meaningless. See Luckel, 819 S.W.2d
at 461; see also Coker, 650 S.W.2d at 393. Each word or phrase should be given its plain
grammatical meaning unless to do so would clearly defeat the parties' intent. Moon Royalty,
LLC, 244 S.W.3d at 394. "Even if different parts of the deed appear contradictory or
inconsistent, the court must strive to harmonize all of the parts[.]" Luckel, 819 S.W.2d at
462. No provision of the deed should be struck down unless an irreconcilable conflict exists
which causes one part of the deed to destroy another part. Id. 

 Here, the parties advance conflicting interpretations of the conveyance language: "all
my interest in and to all that certain land, as hereinafter described . . . ." According to
Derwen, this portion of the granting clause must be read in conjunction with the actual
description of the property set forth in the Deed, which references three of the four original
deeds by which Louis obtained his interest in the 229 acre tract. In essence, Derwen argues
that the phrase "as hereinafter described" modifies "interest," and the only interest in the 229
acre tract conveyed by Louis was the interest he expressly described in the three deeds from
Clara Adams, Lamar Hart, and Mary Foley Cruse. Derwen further argues that because Louis
expressly identified each conveyance in three deeds from Clara Adams, Lamar Hart, and
Mary Foley Cruse in and to the 229 acre tract at issue but did not include the same
description of the conveyance to him by Hattie Breeden, Louis did not intend to convey any
interest in and to the described property conveyed to him by Hattie Breeden. 

 Carrizo argues that Derwen's construction ignores the plain text and unreasonably
tries to re-write the Deed's conveyance of all of Louis's interest in the 229 acre tract as a
conveyance of just a three-fourth undivided interest in the tract. According to Carrizo, the
phrase "as hereinafter described" modifies "land," not "interest," and refers to the entire 229
acre tract described in the Long-Massot Deed. We agree. Utilizing the appropriate rules of
interpretation, we conclude that Derwen's interpretation is unreasonable and thereby find the
Long-Massot Deed is not ambiguous. 

 The doctrine of last antecedent is one of the basic rules of grammatical construction. 
Stewman Ranch, Inc. v. Double M. Ranch, Ltd., 192 S.W.3d 808, 812 (Tex. App.--Eastland
2006, pet. denied). "A court shall give a contract its plain meaning, if possible." See id. The
doctrine of last antecedent provides "that relative and qualifying phrases are to be applied to
the words or phrases immediately preceding them, unless to do so would impair the meaning
of the sentence." Id. The rule must be applied taking into account the whole instrument. Id. 
Qualifying phrases may be extended further than the nearest antecedent when clearly
required by the language of the agreement. See id. We find under the doctrine of last
antecedent, that the phrase "as hereinafter described" modifies "land" and not "interest" in
the Long-Massot deed. Applying the rule of the last antecedent and giving the words their
plain grammatical meaning, we hold that Louis conveyed all of his interest in the subject 229
acre tract. 

 Louis's intent to convey all his interest in the described land is further evidenced by
the habendum clause, which states "[i]t being my intention to hereby convey all my entire
interest in the above described land conveyed to me as aforesaid, subject to all easements and
leases of every kind effective upon said land." On its face, this clause, like the granting
clause, conveys Louis's "entire interest" in the 229 acre tract reserving no interest for
himself. Derwen asserts that Louis did not need to include a reservation or exception clause
in order to retain a mineral interest, and also argues that Louis retained an interest by
conveying "only an undivided percentage of [his] mineral interest in the property." 

 "The proper manner in which to make a reservation is to mention its existence in the
granting clause and to set out the reservation itself after the description and prior to the
habendum." 55 Tex. Jur. 3d Oil and Gas § 65 (2004). Moreover, "'[c]ourts do not favor
reservations by implication."' Ladd v. Du Bose, 344 S.W.2d 476, 479 (Tex. Civ. App.--Amarillo 1961, no writ) (quoting Sharp v. Fowler, 151 Tex. 490, 252 S.W.2d 153, 154
(1952)); see also Monroe v. Scott, 707 S.W.2d 132, 133 (Tex. App.--Corpus Christi 1986,
writ ref'd n.r.e.); Large v. T. Mayfield, Inc., 646 S.W.2d 292, 294 (Tex. App.--Eastland 1983,
writ ref'd n.r.e.). Texas law is well settled that a reservation of minerals must be set out in
"clear language." Ladd, 344 S.W.2d at 479; see also Monroe, 707 S.W.2d at 133; Large, 646
S.W.2d at 294. Louis does not express anywhere in the Deed his intent to convey anything
less than the entirety of the interest he owned in the 229 acre tract. 

 Our holding is based on the four corners of the instrument and harmonizes both the
granting clause and the habendum clause. Any other reading would render the conveyance
language in the granting clause and habendum clause--"all my interest" and "all my entire
interest"--meaningless or inoperative. Were we to adopt Derwen's position we would have
to conclude that the granting clause conveyed only a fraction of Louis's undivided interest
in the land, which has been held to render a deed void for uncertainty. See generally Ellett
v. Liedtke, 668 S.W.2d 880, 881 (Tex. App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.). 
Such a conclusion would be contrary to the express language in the Deed. We overrule
issues one, two, and three, and we affirm the judgment of the trial court. (3)

 AFFIRMED.


 __________________________________

 CHARLES KREGER

 Justice


Submitted on September 11, 2008

Opinion Delivered May 21, 2009



Before McKeithen, C.J., Kreger and Horton, JJ.


1. Carrizo attached to its Motion for Summary Judgment a copy of a petition filed by
Jose Antonio Villalon against Derwen alleging that he discovered the title defect with regard
to the 229 acre tract and had an agreement with Derwen to share in the profits from the
subsequent lease of that mineral interest. 
2. Pritchard stated that Louis's wife waived her right to elect to take her community
share of the estate which she and Louis acquired during marriage.
3. We have not considered appellants' references to the reporter's record or the
statements made by the trial court in making this determination. Therefore, we decline to
rule on appellee's Motion to Strike References to the Reporter's Record.