



# MEMORANDUM OPINION

No. 04-11-00829-CV

Tommie S. **DODD**, Linda Lou Crosland, and Carley H. Dodd,
Appellants

v.

James L. **WIATREK**, Elaine R. Wiatrek, and Garret J. Wiatrek,
Appellees

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. 11-06-0363-CVW
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  October 31, 2012

REVERSED AND RENDERED

        Tommie S. Dodd, Linda Lou Crosland, and Carley H. Dodd ("the Dodds") appeal from a

judgment interpreting a deed and declaring that a royalty reservation in their favor has expired

and the royalty interest has reverted to James L. Wiatrek, Elaine R. Wiatrek, and Garret J.

Wiatrek ("the Wiatreks").  We reverse the trial court's judgment and render judgment for the

Dodds.

**BACKGROUND**

By the deed dated June 7, 1983, Leota Dodd conveyed real property to James and Elaine Wiatrek. The deed granted to the Wiatreks 76 ¼ acres of land described and all of the grantor's rights to the property with warranty and vendor's lien language. The conveyance was made subject to all conditions, easements, covenants, and restrictions of record, specifically referencing two previous mineral leases. Finally, the deed included two reservations to the grantor, in the following language:

> SAVE AND EXCEPT there is reserved unto Grantor, her heirs and assigns, an undivided two-thirds (2/3) interest in all of the payments do [sic] to be paid Grantor under the existing Mineral Lease covering the subject property oil well presently located and producing on the property.

and

> SAVE AND EXCEPT and in addition to the reservation found immediately above, but not in lieu thereof there is reserved unto Grantor, her heirs and assigns, and [sic] undivided one-half (1/2) interest in the existing royalty and all future royalty interests, in all of the oil, gas, coal, lignite, iron, uranium and other minerals, in and under and what may be produced, (by what ever method produced by extraction), from the above property. Grantor, her heirs and assigns, shall not participate in the making of any Oil, Gas or Mineral Lease covering said property, nor shall they participate in any bonus which may be paid for any such Lease, nor shall they participate in any rental or shutin gas well royalty to be paid under any such Lease. Provided further, that such royalty reservation shall terminate and revert to Grantees, fifteen (15) years from date of closing unless there has been production of any of the above- described minerals. Grantees, their heirs and assigns shall not unreasonably withhold the leasing of the property.

The Wiatreks sought a declaratory judgment that the royalty reservation in the deed in favor of the Dodds had expired and the royalty interests reverted to the Wiatreks. The Wiatreks asserted in the trial court that the two-thirds reservation of payments due, in the first "save and except" reservation provision (hereinafter "first reservation"), added to the one-half reservation of royalties, in the second "save and except" reservation provision (hereinafter "second reservation"), would amount to more than one hundred percent of the royalty interest. Thus, the

Wiatreks claimed that the only reasonable interpretation of the reverter provision of the second reservation was that, to prevent reverter, any production had to be from a "new" well rather than the existing well, within fifteen years from the closing.

The Dodds denied the Wiatreks' allegations and counterclaimed, seeking removal of a cloud on their title to the undivided one-half interest in all royalties reserved to them in the deed. The Dodds argued that the first reservation, by the express terms, referred only to lease payments due to Grantor at the time the deed was executed. The second reservation reserved a one-half interest in all royalties from the property, subject to reversion fifteen years from the date of the closing unless there was production of "any" of the described minerals. The Dodds also asserted that, harmonizing the plain meaning of the first and second reservations, the grantor was to receive two-thirds of any payments due to the grantor under the referenced lease before the date of the conveyance and the grantor retained a one-half interest in the existing and all future royalty interests from all minerals from the property, subject to possible reversion. Finally, the Dodds asserted that the Wiatreks' interpretation required the insertion of additional words, language or implied terms that were not in the deed.

The only evidence before the trial court was the deed itself and certain stipulated facts. The parties stipulated that an oil well located on the property produced 322 barrels of oil from June, 1983 through March 31, 1984, and there was no production or extraction of any oil, gas, lignite, iron, uranium or other minerals from the property, except from the existing oil well.

The trial court rendered judgment for the Wiatreks, holding that the parties intended for the reservation in the second reservation to expire if there was no production within fifteen years from the date of the deed from any source other than the well referenced in the first reservation.

The trial court rendered judgment that the second reservation expired by its terms and the royalty interests reverted to the Wiatreks. The Dodds appeal that judgment.

## CONSTRUCTION OF THE DEED

### *Standard of Review*

Neither party contends the deed is ambiguous. The construction of an unambiguous deed is a question of law. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The applicable standard of review is de novo. *City of Del Rio v. Clayton Sam Colt Hamilton Trust*, 269 S.W.3d 613, 616 (Tex. App.—San Antonio, 2008, pet. denied); *see Karm v. City of Castroville*, 219 S.W.3d 61, 63 (Tex. App.—San Antonio 2006, no pet.) ("To the extent that the issues involved stipulated facts and only questions of law were presented to the trial court, this court reviews the trial court's decision de novo."). We will construe the language of the deed to ascertain the intent of the parties as a matter of law without considering parol evidence. *Averyt v. Grande, Inc.*, 717 S.W.2d 891, 893 (Tex. 1986); *Eastin v. Dial*, 288 S.W.3d 491, 500 (Tex. App.—San Antonio 2009, pet. denied).

### *Deed Construction Rules*

When interpreting a deed, the intent of the parties is to be determined from the express language found within the four corners of the document. *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 796 (Tex. 1995); *Luckel*, 819 S.W.2d at 461-63. The intent that governs is not the intent that the parties meant but failed to express, but rather the intent that is expressed. *Moon Royalty LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex. App.—Eastland 2009, pet. denied). Even if the court could discern the actual subjective intent of the parties, it is not the subjective intent that governs, but the intent "expressed in the instrument as a whole, 'without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary

rules.'" *Luckel*, 819 S.W.2d at 462 (citing *Sun Oil Co. v. Burns*, 125 Tex. 549, 552, 84 S.W.2d 442, 444 (1935)).

In seeking to ascertain the intentions of the parties, the court should harmonize all parts of the deed. *Luckel*, 819 S.W.2d at 462; *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). The court must construe the deed so as to give each provision meaning and purpose so that no provision is rendered meaningless or moot. *See Moon Royalty L.L.C.*, 244 S.W.3d at 394 (citing Mark K. Glasser & Keith A. Rowley, *On Parol: The Construction and Interpretation of Written Agreements and the Role of Extrinsic Evidence in Contract Litigation,* 49 BAYLOR L. REV. 657, 664-82 (1997)). "[T]he parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *Luckel*, 819 S.W.2d at 462 (quoting *Altman*, 712 S.W.2d at 118). Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions. *Benge v. Scharbauer*, 152 Tex. 447, 451, 259 S.W.2d 166, 167 (1953). The court should "not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof." *Luckel*, 819 S.W.2d at 462 (quoting *Benge*, 259 S.W.2d at 167). The court must construe the "language as it is written and . . . [has] no right to alter it by interpolation or substitution." *Dahlberg v. Holden*, 150 Tex. 179, 183, 238 S.W.2d 699, 701 (1951). The court may not interpolate or substitute in harmonizing deed provisions to change the clear and unambiguous language. *Luckel*, 819 S.W.2d at 463.

### *Discussion*

The Wiatreks variously assert that royalty payments are the only subject of the first reservation, that the Dodds reserved a two-thirds interest in the existing producing well and that two-thirds interest added to the one-half royalty interest reserved in the second reservation would

be more than 100 percent. The Wiatreks reason, therefore, that the second reservation cannot apply to the existing well. We disagree with this reasoning.

The first reservation reserved to the grantor an undivided two-thirds of all the *payments due* to her under the referenced lease. The second reservation refers not to payments, but rather to "the existing royalty and all future royalty interests . . . ." The first reservation plainly reserved the right to receive accrued and owing payments, but did not reserve an interest in realty, such as a royalty interest. The first reservation refers retrospectively to payments accrued before the date of the deed, and the second reservation refers prospectively to realty interests existing at the time of the deed or arising thereafter. There is no overlap in the reservations as they do not reserve different percentages of the same thing—royalty interests.

The Wiatreks also assert that, to meet the "unless there has been production" qualification under the second reservation, the production must be from a "subsequent lease." They also argue that, because the second reservation "is not in lieu" of the first reservation, the production referenced in the reverter provision must be from any well or source other than the existing well. We again disagree.

The Wiatreks' interpretation ignores the plain language of the second reservation, which reserved to the Dodds an interest in "the existing royalty" as well as all future royalty interests. In addition to ignoring this language, the Wiatreks' interpretation requires this court to add language to the deed, going beyond the four corners. The reverter provision does not refer to minerals "other than those" from any particular well or lease, but refers only to "any" minerals "in and under and what may be produced . . . from the above property." We must construe the deed as written; addition of any other language is not warranted. *See, e.g., Luckel*, 819 S.W.2d at

462, 463; *Dahlberg*, 238 S.W.2d at 701. We do not discern any reason to deviate from the express language of the deed.

The Wiatreks further argue that, because the parties knew the existing well was producing oil at the time of the deed, the parties could not have intended the reverter provision to include that existing well. Because of the existing production, there would never be a possibility of reverter under the second reservation and the reverter provision would be rendered meaningless. This argument does not dissuade us from our conclusion.

There is no evidence regarding the parties' circumstances or states of mind at the time the deed was signed nor can the necessary facts be inferred from the deed. *See, e.g., Lozano v. Lozano*, 52 S.W.3d 141, 149 (Tex. 2001) (material fact must be *reasonably* inferred from known circumstances). The first reservation notes that the existing oil well was "presently" producing; the reverter provision's relevant time is "the date of closing." Because these provisions served different purposes and addressed different times, neither party's state of mind or knowledge of facts and circumstances can be reasonably inferred from the deed alone.

More importantly, the Wiatreks' assertion improperly speculates about the parties' subjective intent over the intent actually expressed in the deed as a whole. *See Luckel*, 819 S.W.2d at 462 (even if court could discern actual subjective intent of parties, it is not subjective intent that governs, but intent of parties as expressed in instrument as a whole); *Moon Royalty*, 244 S.W.3d at 394 (intent that governs is not intent parties meant but failed to express but rather intent expressed). The plain language of the deed as a whole clearly indicates the intent of the parties expressed in the deed and must prevail.

## REVERSION OF ROYALTY INTERESTS

The parties stipulated that Railroad Commission records showed that the oil well located on the 76 ¼ acres purchased by the Wiatreks produced 322 barrels of oil from June, 1983 through March 31, 1984. The reverter provision in the second reservation provides "that such royalty reservation shall terminate and revert to Grantees, fifteen (15) years from the date of closing unless there has been production of any of the above described minerals." Under the plain language of this provision, there was production of oil (one of the specified minerals) during the fifteen years after closing. Therefore, the royalty interests reserved to the Dodds did not terminate or revert.

This interpretation harmonizes the deed, and particularly the first and second reservations, to give all the provisions meaning and purpose. *See, e.g., Moon Royalty*, 244 S.W.3d at 394. There is no conflict in these provisions and, certainly, there is not such irreconcilable conflict that one part of the deed destroys another part. *Luckel*, 819 S.W.2d at 462.[1]

## CONCLUSION

We reverse the trial court's judgment and render judgment that the Dodds own an undivided one-half interest in the existing and all future royalty interests in all of the oil, gas, coal, lignite, iron, uranium, and other minerals, in and under and what may be produced, from the property conveyed in the deed in this cause.

Steven C. Hilbig, Justice

---

[1] Because we reverse the trial court's judgment based on the construction of the deed, we do not address the Dodds' legal and factual sufficiency of the evidence point.